HOUSATONIC RAILROAD COMPANY,
INC. *v.* COMMISSIONER OF
REVENUE SERVICES
(SC 18685)

Rogers, C. J., and Norcott, Palmer, Zarella, McLachlan,
Eveleigh and Vertefeuille, Js.

Argued February 10—officially released June 28, 2011

*Edward J. Rodriguez*, with whom was *Matthew R. Whitney*, for the appellant (plaintiff).

*Rupal Shah Palanki*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, former attorney general, for the appellee (defendant).

*Opinion*

ZARELLA, J. This appeal requires us to determine whether the doctrine of sovereign immunity bars an action brought against the state by a rail carrier seeking a refund of amounts paid to a petroleum product distributor to cover the cost of an allegedly discriminatory petroleum fuel products gross earnings tax (petroleum tax) imposed on and paid by the distributor. The plaintiff, Housatonic Railroad Company, Inc., appeals[1] from the judgment of the trial court, which granted the motion of the defendant, the commissioner of revenue services (commissioner), to dismiss the plaintiff's

---

[1] The plaintiff appealed to the Appellate Court from the judgment of the trial court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

appeal seeking a refund for amounts paid to a fuel distributor to cover the petroleum tax imposed on the distributor pursuant to General Statutes § 12-587 (b) (1). On appeal, the plaintiff claims that the trial court incorrectly concluded that the state was immune from suit because the plaintiff could not establish an exception to sovereign immunity under any of three separate statutory provisions: (1) the federal Railroad Revitalization and Regulatory Reform Act of 1976 (4-R act), Pub. L. No. 94-210, 90 Stat. 31, which, among other things, prohibits states from taxing rail carriers in a discriminatory manner; see 49 U.S.C. § 11501 (b) (2006); (2) General Statutes § 12-597, which permits "[a]ny taxpayer" aggrieved by an order or decision of the commissioner with respect to the imposition of the petroleum tax to appeal to the Superior Court; and (3) General Statutes § 12-33, which permits any aggrieved town or company to appeal to the Superior Court from an action of the commissioner. Because we conclude that none of the statutory provisions on which the plaintiff relies permits a rail carrier to bring an action against the state for a refund of taxes paid by a petroleum distributor, we affirm the judgment of the trial court.

The trial court's memorandum of decision summarizes the plaintiff's factual allegations as follows: "In its complaint, the plaintiff alleges that [it] is a specially chartered Connecticut railroad corporation operating a railroad exclusively as a common carrier of freight by rail within [this state] and Massachusetts under the authority of the [federal] Surface Transportation Board and its predecessor agency, the [federal] Interstate Commerce Commission.[2]

[2] The Interstate Commerce Commission was abolished and its functions were transferred to the Surface Transportation Board, effective January 1, 1996. See ICC Termination Act of 1995, Pub. L. No. 104-88, §§ 101 and 201 (a), 109 Stat. 803, 804, 933–34.

"During the period from July 1, 2003, through June 30, 2007, [the plaintiff] purchased diesel fuel in Connecticut from Sack Distributors Corporation and its predecessor, Stephen H. Sack, [doing business as] Sack Distributors, in [the city of] Hartford . . . .[3] The diesel fuel purchased from the distributor was used exclusively by [the plaintiff] in its locomotives as part of its interstate freight rail business. The distributor remitted the [petroleum tax], in the amount of $100,176.91, to the commissioner." The distributor separately billed the plaintiff for the amount of the tax that it paid to the department of revenue services (department), and the plaintiff paid that amount directly to the distributor. Although the plaintiff did not pay the amount of the fuel purchase attributed to the petroleum tax directly to the department, the plaintiff submitted requests to the department for a refund of the money paid for the petroleum tax by the distributor to the department. The plaintiff based its request for a refund on its claim that the petroleum tax discriminated against it because gross earnings from fuel sold for use in vessels traveling in interstate commerce (water carriers) are exempt from the tax, whereas gross earnings from fuel sold to rail carriers are not exempt, in violation of the 4-R act. The commissioner denied the plaintiff's request for a refund on the ground that only the distributor, and not the plaintiff, could request a refund because the distributor, rather than the plaintiff, had paid the tax in question. The plaintiff subsequently appealed from the commissioner's decision to the Superior Court, seeking a refund of the tax. The commissioner filed a motion to dismiss the appeal, claiming that the doctrine of sovereign immunity barred the plaintiff's action because the plaintiff had not established statutory authority to bring the appeal, and, therefore, the court did not have subject matter jurisdiction over the plaintiff's claim.

---

[3] We hereinafter refer to Sack Distributors Corporation and Sack collectively as the distributor throughout this opinion.

The plaintiff responded that it could bring its claim under any of three separate statutory provisions that were sufficient to establish an exception to sovereign immunity: (1) the antidiscrimination provisions of the 4-R act; see 49 U.S.C. § 11501 (2006); (2) § 12-597, which permits "[a]ny taxpayer" aggrieved by a decision of the commissioner regarding the imposition of the petroleum tax to appeal from that decision to the Superior Court; and (3) § 12-33, which permits any town or company aggrieved by an action of the commissioner to appeal from that action to the Superior Court. Following a hearing, the trial court granted the commissioner's motion to dismiss. The court first concluded that the plaintiff could not appeal under § 12-33 because § 12-597, which applies expressly to appeals relating to the imposition of the petroleum tax, was the controlling statute for purposes of such appeals. The court next concluded that the plaintiff could not appeal under § 12-597 because the plaintiff was not a "taxpayer" within the meaning of that statute insofar as it was not liable for the tax and did not pay the tax to the department. The court instead concluded that only fuel distributors are taxpayers for purposes of § 12-597 and that, because the plaintiff was not a fuel distributor, it could not establish that the state had waived its immunity with respect to the plaintiff's claim under that provision. Finally, the court concluded that the plaintiff could not assert its claim against the state under the 4-R act because that act prohibited only discriminatory ad valorem taxes on property and did not apply to taxes on gross earnings of fuel distributors. Having concluded that none of the statutes on which the plaintiff relied permitted it to bring its claim, the court concluded that the doctrine of sovereign immunity barred the plaintiff's appeal. The court granted the commissioner's motion to dismiss the plaintiff's appeal and rendered judgment in the commissioner's favor. This appeal followed.

On appeal to this court, the plaintiff claims that, because the state has consented to such claims, the trial court incorrectly concluded that the plaintiff's claim for a refund was barred by the doctrine of sovereign immunity. In support of this argument, the plaintiff renews the argument that it made in the trial court, namely, that its claim is maintainable on three separate and independent grounds. The plaintiff first contends that the claim is permitted by the 4-R act, which abrogates a state's sovereign immunity from claims brought by rail carriers seeking relief from discriminatory taxes. The plaintiff next contends that §§ 12-33 and 12-597 each provide statutory authority for the plaintiff to bring its claim for a refund against the state. The commissioner argues that none of the provisions on which the plaintiff relies entitles it to bring its claim against the state and, therefore, that the trial court properly granted the commissioner's motion to dismiss on the basis of sovereign immunity. We agree with the commissioner.

We begin with the standard of review of a trial court's decision to grant a motion to dismiss and the applicable principles governing the doctrine of sovereign immunity. "A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . [T]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss." (Citation omitted; internal quotation marks omitted.) *C. R. Klewin Northeast, LLC* v. *State*, 299 Conn. 167, 174–75, 9 A.3d 326 (2010).

"Sovereign immunity relates to a court's subject matter jurisdiction over a case . . . and therefore presents a question of law over which we exercise de novo review. . . . The principle that the state cannot be sued without its consent, or sovereign immunity, is well established under our case law. . . . It has deep roots

in this state and our legal system in general, finding its origin in ancient common law. . . . Exceptions to this doctrine are few and narrowly construed under our jurisprudence." (Internal quotation marks omitted.) *DaimlerChrysler Corp.* v. *Law,* 284 Conn. 701, 711, 937 A.2d 675 (2007). To " 'overcome the presumption of sovereign immunity' "; id.; a plaintiff seeking to bring a claim against the state must establish that an exception to the doctrine applies. See id., 711–12.

## I

The plaintiff first asserts that it may bring its claim for a refund under the 4-R act and argues that the trial court incorrectly concluded that the 4-R act prohibits only discriminatory property taxes and not petroleum taxes. In support of its claim, the plaintiff argues that, in addition to prohibiting discriminatory property taxes, 49 U.S.C. § 11501 (b) (4) expressly prohibits states from "impos[ing] another tax that discriminates against a rail carrier" and that this includes discriminatory petroleum taxes. The plaintiff further argues that the state cannot assert a sovereign immunity defense in response to a claim brought under the 4-R act because Congress has abrogated this immunity. The commissioner responds that, although the 4-R act does permit rail carriers to bring claims against the state for violations of that act, the act provides for injunctive or declaratory relief only and not a tax refund, as the plaintiff seeks. For this reason, the commissioner claims that the state retains its immunity from actions seeking refunds.[4] Although

[4] Although the commissioner did not specifically raise this claim as an alternative ground for affirming the judgment of the trial court; see Practice Book § 63-4 (a) (1); the claim raises an issue regarding the subject matter jurisdiction of this court; see, e.g., *DaimlerChrysler Corp.* v. *Law,* supra, 284 Conn. 711 (sovereign immunity implicates subject matter jurisdiction); and this court therefore is required to address it. See, e.g., *Richardson* v. *Commissioner of Correction,* 298 Conn. 690, 696, 6 A.3d 52 (2010) ("[t]he subject matter jurisdiction requirement may not be waived by any party, and also may be raised by a party, or by the court sua sponte, at any stage of the proceedings, including on appeal" [internal quotation marks omitted]).

we agree with the plaintiff that the 4-R act does permit it to bring a claim against the state for the imposition of discriminatory petroleum taxes, we affirm the judgment of the trial court on the alternative ground that the 4-R act permits the plaintiff to bring an action for injunctive or declaratory relief only and not for a refund of taxes already paid. Therefore, the state is immune from such claims notwithstanding the provisions of the 4-R act.

The 4-R act permits private rail carriers to bring an action against a state for violations of the act, including those states that do not otherwise consent to be sued by private parties (nonconsenting states), because Congress has abrogated the sovereign immunity of nonconsenting states pursuant to its enforcement powers under § 5 of the fourteenth amendment to the United States constitution.[5] As a general rule, the doctrine of sovereign immunity prohibits Congress from expanding the jurisdiction of state courts to allow actions by private parties against nonconsenting states just as the eleventh amendment to the United States constitution[6]

Moreover, the plaintiff had an opportunity to respond to this claim, and did respond, in its reply brief. In fact, the plaintiff requested and was granted permission to use additional pages in its reply brief to respond to this claim pursuant to Practice Book § 67-3. Accordingly, we conclude that the parties had an adequate opportunity to address this issue, and our resolution of the case on this ground will not prejudice the plaintiff. See, e.g., *Kaddah* v. *Commissioner of Correction*, 299 Conn. 129, 136 n.10, 7 A.3d 911 (2010).

[5] The fourteenth amendment to the constitution of the United States, § 5, provides: "The Congress shall have power to enforce, by appropriate legislation, the provisions of this article."

[6] The eleventh amendment to the constitution of the United States provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." The United States Supreme Court has construed this provision to preserve a broad concept of sovereign immunity that includes a prohibition on federal jurisdiction over an action brought against a nonconsenting state by its own citizens as well. *Hans* v. *Louisiana*, 134 U.S. 1, 10 S. Ct. 504, 33 L. Ed. 842 (1890).

prohibits Congress from expanding the jurisdiction of federal courts to allow such actions. See *Alden* v. *Maine*, 527 U.S. 706, 754, 119 S. Ct. 2240, 144 L. Ed. 2d 636 (1999). There is, however, an exception to this general rule that allows Congress to enforce the provisions of the fourteenth amendment to the United States constitution by expanding the jurisdiction of state or federal courts to allow actions by private parties against nonconsenting states. Section 5 of the fourteenth amendment empowers Congress to enforce that amendment through "appropriate legislation . . . ." Through these enforcement powers, Congress may abrogate the sovereign immunity of a nonconsenting state because, "in adopting the [f]ourteenth [a]mendment, the people required the [s]tates to surrender a portion of [their sovereign immunity] . . . ." *Alden* v. *Maine*, supra, 756. Courts will uphold federal legislation passed pursuant to this enforcement power as long as (1) "Congress [has] identified a history and pattern of unconstitutional discrimination by the states against the [nonsuspect] class" that the legislation protects, and (2) the scope of the legislation and the relief provided are "congruent and proportional" to the harm caused by the discrimination. *CSX Transportation, Inc.* v. *New York State Office of Real Property Services*, 306 F.3d 87, 97 (2d Cir. 2002). Using this test, courts that have examined the 4-R act have concluded that it is a valid exercise of Congress' enforcement powers under § 5 of the fourteenth amendment and that it thereby abrogates a nonconsenting state's immunity from actions brought pursuant to the act. See, e.g., id., 96–98.[7] Because the state is not immune from claims by private rail carriers that are authorized by the provisions of the 4-R act, we must determine whether the plaintiff's claim is permitted by that act.

---

[7] Neither party claims that the 4-R act is not a valid exercise of Congress' powers under § 5 of the fourteenth amendment, and we see no reason to depart from case law supporting that proposition.

We begin our review with the decision of the trial court in the present case, which dismissed the plaintiff's appeal, in part because the 4-R act prohibits only discriminatory ad valorem taxes on property and not petroleum taxes. We conclude that the trial court improperly dismissed the plaintiff's appeal on that basis.

When construing the scope of a federal law, we look to the text of the statute at issue. See, e.g., *CSX Transportation, Inc.* v. *Alabama Dept. of Revenue*, 562 U.S. 277, 283, 131 S. Ct. 1101, 179 L. Ed. 2d 37 (2011). The portion of the 4-R act at issue in this appeal, namely, 49 U.S.C § 11501 (b), provides in relevant part: "The following acts unreasonably burden and discriminate against interstate commerce, and a State, subdivision of a State, or authority acting for a State or subdivision of a State may not do any of them . . . ." The statute then sets forth four specific prohibitions on state tax authority. The first three provisions prohibit the imposition of ad valorem taxes on railroad property that discriminate against railroads as compared to other commercial and industrial property. See 49 U.S.C. § 11501 (b) (1) through (3) (2006).[8] The text of the fourth prohibition uses language that is much broader than the first three subdivisions and provides that a state may not "[i]mpose another tax that discriminates against

---

[8] Title 49 of the United States Code, § 11501, provides in relevant part: "(b) The following acts unreasonably burden and discriminate against interstate commerce, and a State, subdivision of a State, or authority acting for a State or subdivision of a State may not do any of them:

"(1) Assess rail transportation property at a value that has a higher ratio to the true market value of the rail transportation property than the ratio that the assessed value of other commercial and industrial property in the same assessment jurisdiction has to the true market value of the other commercial and industrial property.

"(2) Levy or collect a tax on an assessment that may not be made under paragraph (1) of this subsection.

"(3) Levy or collect an ad valorem property tax on rail transportation property at a tax rate that exceeds the tax rate applicable to commercial and industrial property in the same assessment jurisdiction. . . ."

a rail carrier providing transportation subject to the jurisdiction of the [Surface Transportation] Board . . . ."[9] 49 U.S.C. § 11501 (b) (4) (2006). Federal appellate courts have long interpreted this provision to apply to any type of discriminatory tax. See, e.g., *Burlington Northern R. Co.* v. *Superior*, 932 F.2d 1185, 1186 (7th Cir. 1991) ("Subsection [b] [4] [of 49 U.S.C. § 11501] is a catch-all designed to prevent the state from accomplishing the forbidden end of discriminating against railroads by substituting another type of tax. It could be an income tax, a gross-receipts tax, a use tax, an occupation tax . . . whatever."). The United States Supreme Court upheld this commonly accepted reading of 49 U.S.C. § 11501 (b) (4) in a recent decision. See *CSX Transportation, Inc.* v. *Alabama Dept. of Revenue*, supra, 283–88. In *CSX Transportation, Inc.*, the court concluded that 49 U.S.C. § 11501 (b) (4) permitted an interstate rail carrier to maintain a claim of discriminatory taxation against the state of Alabama arising from a tax that applied to the sale or use of diesel fuel to or by rail carriers where Alabama exempted from taxation diesel fuel sold to interstate motor and water carriers. Id., 282, 296.

In the present case, the plaintiff alleges that the state imposed a tax on the gross earnings of fuel distributors from the sale of fuel to rail carriers but exempted from taxation gross earnings from the sale of fuel to water carriers and that this tax resulted in the plaintiff having to pay a higher price for fuel.[10] In view of the similarity

[9] In its complaint, the plaintiff claims that it is subject to the jurisdiction of the federal Surface Transportation Board. The commissioner does not dispute this allegation.

[10] We note that, unlike the tax in *CSX Transportation, Inc.*, which was assessed directly against the rail carrier, the tax at issue in the present case was assessed against the distributor and not against the rail carrier. In determining the applicability of the 4-R act, we do not consider this distinction to be relevant or fatal to the plaintiff's claim. See *Burlington Northern R. Co.* v. *Superior*, supra, 932 F.2d 1186 ("[t]he [4-R act] applies to taxes on rail transportation property and to other taxes if they discriminate against rail carriers; it thus is not limited to cases in which the railroad is the

between the plaintiff's allegations in the present case and the claims of the interstate rail carrier in *CSX Transportation, Inc.*, we conclude that the trial court incorrectly dismissed the plaintiff's appeal on the ground that the 4-R act applies only to ad valorem taxes on property.[11]

Although we conclude that the 4-R act applies to discriminatory petroleum taxes, we further conclude that the 4-R act does not permit courts to order refunds of taxes already paid to the state, as the plaintiff seeks in the present case; instead, it permits only prospective relief, such as injunctive or declaratory relief. The text of subsection (c) of 49 U.S.C. § 11501 provides in relevant part: "Notwithstanding section 1341 of title 28[12] and without regard to the amount in controversy or citizenship of the parties, a district court of the United States has jurisdiction, concurrent with other jurisdiction of courts of the United States and the States, *to prevent* a violation of subsection (b) of this section. . . ." (Emphasis added.) Although the statute does not delineate the specific types of remedies that courts may order "to prevent" violations of 49 U.S.C. § 11501 (b), we believe that a fair reading of this provision limits the remedies available under this section to those that are prospective in nature, including injunctive or declaratory relief. Indeed, nothing in this provision mentions or confers on courts the power to grant remedies for

taxpayer"). This distinction, however, is relevant to our analysis of the plaintiff's claims under state law. See parts II and III of this opinion.

[11] The commissioner also argues that the 4-R act does not apply to allegedly discriminatory tax exemptions and that, because the plaintiff is challenging a tax exemption, this claim is not cognizable under the 4-R act. The United States Supreme Court's recent decision in *CSX Transportation, Inc.*, however, held to the contrary. See *CSX Transportation, Inc.* v. *Alabama Dept. of Revenue*, supra, 562 U.S. 283, 286–87.

[12] Title 28 of the United States Code, § 1341, provides: "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."

past violations. In the present case, however, the plaintiff seeks a refund of taxes that already have been paid, allegedly in violation of the 4-R act, and it does not seek to enjoin the future collection of the tax at issue.[13] Because the 4-R act does not provide for refunds of taxes already paid, the plaintiff's request for relief exceeds that permitted under the 4-R act.

The plaintiff urges us to allow a claim for a refund because nothing in the 4-R act expressly limits the power of state courts to order refunds. In support of this argument, the plaintiff asserts that Congress may "confer jurisdiction to state courts to grant whatever remedy the state court deems appropriate." Although we agree that Congress may invoke its enforcement powers under § 5 of the fourteenth amendment to provide for appropriate relief; see, e.g., *Alden* v. *Maine*, supra, 527 U.S. 756; we disagree with the plaintiff that we may expand the relief available under the 4-R act simply because Congress has not expressly prohibited such relief.

The 4-R act constitutes congressional interference with state tax authority and is in derogation of the doctrine of sovereign immunity, which requires a narrow reading of the reach of that act and the types of relief available. The United States Supreme Court has recognized that the taxing authority of a state government is a key component of a state's sovereignty. See *Dept. of Revenue* v. *ACF Industries, Inc.*, 510 U.S. 332, 345, 114 S. Ct. 843, 127 L. Ed. 2d 165 (1994). Because the 4-R act "sets limits [on] the taxation authority of state government"; id.; the United States Supreme Court has cautioned that the scope of the act should not be expanded beyond that provided for by Congress. See

---

[13] Indeed, as of July 1, 2007, a petroleum distributor's gross earnings from petroleum products sold to rail carriers are no longer subject to the petroleum tax. See General Statutes § 12-587 (b) (2) (L).

id. (declining to "extend the [4-R act] beyond its evident scope" because it "sets limits [on] the taxation authority of state government"); see also *CSX Transportation, Inc.* v. *Alabama Dept. of Revenue*, supra, 562 U.S. 292 (reiterating principle that courts should not " 'extend' " 4-R act beyond its clear meaning). See generally *Scarborough* v. *Principi*, 541 U.S. 401, 426, 124 S. Ct. 1856, 158 L. Ed. 2d 674 (2004) ("a waiver of sovereign immunity must be construed strictly in favor of the sovereign and not enlarge[d] . . . beyond what the language requires" [internal quotation marks omitted]), quoting *United States* v. *Nordic Village, Inc.*, 503 U.S. 30, 34, 112 S. Ct. 1011, 117 L. Ed. 2d 181 (1992). The only form of relief provided for in the 4-R act is the power to "prevent" violations of the act. 49 U.S.C. § 11501 (c) (2006). Because nothing in the 4-R act provides for retroactive relief, and because the reach of the 4-R act should not be expanded "beyond its evident scope"; *Dept. of Revenue* v. *ACF Industries, Inc.*, supra, 345; we decline to expand the reach of that act by adding remedies not expressly provided for by Congress.[14]

---

[14] The plaintiff also argues that the courts of this state are not bound by the same considerations of state sovereignty as federal courts and, therefore, may order the commissioner to issue a refund because "[t]he eleventh amendment constraints [that] prevent federal courts from ordering a refund are constraints [on] the power of Congress to expand federal . . . jurisdiction [and] not [on] the power of Congress to prohibit state conduct [or on] the power of Congress to confer jurisdiction to state courts to grant whatever remedy the state court deems appropriate."

This argument contradicts the decision of the United States Supreme Court in *Alden* v. *Maine*, supra, 527 U.S. 706, in which that court concluded that Congress may not expand the jurisdiction of state courts to allow private actions against nonconsenting states through its powers under article one of the United States constitution. Id., 754. In reaching this conclusion, the court reasoned that, although the eleventh amendment merely constrains Congress' power to expand *federal court* jurisdiction to include private actions against nonconsenting states, general principles of sovereign immunity prohibit Congress from expanding *state court* jurisdiction to include such actions. See id., 748–54. Therefore, regardless of whether Congress is expanding federal or state court jurisdiction to include private actions against nonconsenting states, the limitations on this power and the exceptions to those limitations are essentially the same. See id., 754 ("[w]e are

In support of its argument that courts may order tax refunds because the 4-R act does not expressly prohibit such a remedy, the plaintiff cites to a federal decision in which the court concluded that the 4-R act did not prevent courts from ordering refunds. *Atchison, Topeka & Santa Fe Railway Co.* v. *Lennen*, 732 F.2d 1495 (10th Cir. 1984). In *Lennen*, the Tenth Circuit Court of Appeals, construing an earlier version of the 4-R act,[15] concluded that, although the text of the act expressly permitted only injunctive or declaratory relief, tax refunds nevertheless might be permitted because the court was "unwilling to infer" a restriction on such a remedy. Id., 1507. The court ultimately declined, however, to order a refund on the basis of the facts of that case. See id. In reaching its conclusion that refunds might be permitted because the language of the 4-R act did not expressly prohibit refunds, the Tenth Circuit relied on a decision of the United States Supreme Court that permitted a court to use its equitable powers to craft a remedy for a violation of a federal antidiscrimination law by a private employer even though Congress

aware of no constitutional precept that would admit of a congressional power to require state courts to entertain federal [actions that] are not within the judicial power of the United States and could not be heard in federal courts"). Therefore, we conclude that the same principles that prevent federal courts from expanding the reach of the 4-R act beyond that clearly provided for by Congress apply equally to this court's construction of the 4-R act. Cf. *Sullins* v. *Rodriguez*, 281 Conn. 128, 133–38, 913 A.2d 415 (2007) (observing that, although valid federal laws generally may be enforced in state courts, when construing scope of federal law that encroaches on state's sovereign immunity, federal law and principles control our analysis).

[15] The court in *Lennen* construed and applied an earlier version of the 4-R act. See *Atchison, Topeka & Santa Fe Railway Co.* v. *Lennen*, supra, 732 F.2d 1497–98 (construing Pub. L. No. 94-210, § 306, 90 Stat. 54, codified at 49 U.S.C. § 26c [2] [1976]). That statutory provision provided in relevant part: "[T]he district courts of the United States shall have jurisdiction, without regard to amount in controversy or citizenship of the parties, to grant such mandatory or prohibitive injunctive relief, interim equitable relief, and declaratory judgments as may be necessary to prevent, restrain, or terminate any acts in violation of this section . . . ." 49 U.S.C. § 26c (2) (1976).

had permitted courts only to "restrain" violations of that law. (Internal quotation marks omitted.) Id., 1506, quoting *Mitchell* v. *Robert DeMario Jewelry, Inc.,* 361 U.S. 288, 291, 80 S. Ct. 332, 4 L. Ed. 2d 323 (1960).

We disagree with and decline to follow the decision in *Lennen* for two reasons. First, we disagree with the court's reliance on *Mitchell* because that case did not address the availability of remedies against a sovereign. In *Mitchell,* the court addressed a claim for restitution for lost wages against a private employer under a different federal statute. See *Mitchell* v. *Robert DeMario Jewelry, Inc.,* supra, 361 U.S. 289–90. Although the federal statute at issue in *Mitchell* appeared to permit courts only to " 'restrain' " violations of the law; id., 289; the court concluded that, "[u]nless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied." (Internal quotation marks omitted.) Id., 291. Unlike the claim in *Mitchell,* which related to employment discrimination and was brought against a private employer, the claim in the present case was brought against the state and involves matters of state tax authority. As we discussed previously, United States Supreme Court cases decided after *Lennen* demonstrate that states generally are immune from congressional interference on issues of state tax authority, a principle that dictates a narrow construction of the 4-R act. The *Lennen* court's reliance on *Mitchell* to expand the remedies available under the 4-R act by allowing for remedies not specifically provided for by Congress appears to contravene this principle. See *General American Transportation Corp.* v. *Limbach,* Docket No. C-2-85-1603, 1987 WL 288146, *15 (S.D. Ohio December 28, 1987) (questioning validity of court's conclusion in *Lennen* regarding availability of tax refund under 4-R act); see also *Kansas City Southern Railway Co.* v. *Borrowman,* Docket No.

09-3094, 2009 WL 3188305, *5 n.2 (C.D. Ill. September 30, 2009) (questioning applicability of *Mitchell* to issue of remedies available under 4-R act).

Second, subsequent decisions regarding the relief available under the 4-R act demonstrate that the prevailing view among courts is that the act permits only injunctive or declaratory relief. The very same federal circuit court of appeals that concluded in *Lennen* that refunds might be allowed under the 4-R act indicated in a subsequent decision that the 4-R act permits only injunctive relief, contrary to its earlier decision. See *Union Pacific R. Co.* v. *Utah*, 198 F.3d 1201, 1208 (10th Cir. 1999). In *Union Pacific R. Co.*, the court concluded that the 4-R act constituted a valid and reasonable exercise of Congress' authority under § 5 of the fourteenth amendment to abrogate a state's sovereign immunity. Id., 1209. It reached its conclusion in part on the basis that the remedy provided by the 4-R act was a congruent and proportional response to discrimination against rail carriers because "the [4-R] [a]ct permits only injunctive relief . . . ." Id., 1208. The Tenth Circuit Court of Appeals reiterated this position in a subsequent case in which that court declined to overturn its holding in *Union Pacific R. Co.* See *Burlington Northern & Santa Fe Railway Co.* v. *Burton*, 270 F.3d 942, 946–47 (10th Cir. 2001), cert. denied sub nom. *Atwood* v. *Burlington Northern & Santa Fe Railway Co.*, 536 U.S. 959, 122 S. Ct. 2664, 153 L. Ed. 2d 838 (2002). The Second Circuit Court of Appeals, in addressing the same issue as the court in *Union Pacific R. Co.*, also based its conclusion that the 4-R act was a valid exercise of congressional power in part on the basis that "Congress fashioned a congruent and proportional remedy in the 4-R [a]ct" because the act authorizes rail carriers "only to seek injunctive relief as to the amount in excess of that allowable under the 4-R [a]ct." *CSX Transportation, Inc.* v. *New York State Office of Real Property Services*,

supra, 306 F.3d 97.[16] Decisions of the federal district courts also reflect this trend. See, e.g., *Kansas City Southern Railway Co.* v. *Borrowman,* supra, 2009 WL 3188305, *5 n.2 ("[T]raditional principles of comity and restraint require the [c]ourt to construe [49 U.S.C.] § 11501 narrowly. . . . Section 11501 [c] [of title 49 of the United States Code] gives [the] [c]ourt the power to *prevent* a violation of [49 U.S.C.] § 11501 [b] . . . and will not be interpreted as an indication that federal district courts may open state coffers to plaintiff [rail carriers] seeking refunds of past tax payments." [Citation omitted; emphasis in original; internal quotation marks omitted.]); *General American Transportation Corp.* v. *Limbach,* supra, 1987 WL 288146, *15 ("the [c]ourt is extremely hesitant to ignore the proscription of the [4-R act] which by its terms plainly would seem to limit relief to a prospective remedy only"); *Burlington Northern R. Co.* v. *Bair,* 584 F. Sup. 1229, 1231–32 (S.D. Iowa 1984) (declining to order refund under 4-R act because language of act "does not provide for tax payment refunds," "[p]rinciples of comity mandate a narrow construction of the relief provision" of the act, and any intent to abrogate state immunity from claim for refund "must be clear from the language of the law enacted"), rev'd in part on other grounds, 766 F.2d 1222 (8th Cir. 1985).[17]

---

[16] To read the 4-R act to permit "whatever remedy the state court deems appropriate," as the plaintiff suggests, would undermine the conclusion of these courts that the act is a valid exercise of Congress' enforcement powers under § 5 of the fourteenth amendment because these courts reached this conclusion in part on the ground that the act permits only injunctive or declaratory relief.

[17] The plaintiff also cites to a single case in which a federal district court ordered a state to refund taxes paid in violation of the 4-R act. *Atchison, Topeka & Santa Fe Railway Co.* v. *State Board of Equalization,* Docket No. C-89-4030 DLJ, 1994 WL 508836 (N.D. Cal. September 7, 1994). In ordering a refund, that court did not provide any authority for its decision or any analysis as to whether the 4-R act permitted such refunds. See id., *5–*6. Although the defendants in that case appealed from the order of the District Court to the Ninth Circuit Court of Appeals, that court dismissed the appeal for lack of jurisdiction because of a late filing. *Atchison, Topeka & Santa*

For the foregoing reasons, we conclude that Congress, in exercising its enforcement powers under § 5 of the fourteenth amendment, permitted courts to provide only injunctive or declaratory relief to prevent violations of the antidiscrimination provisions of the 4-R act and that Congress did not abrogate the state's immunity from claims seeking refunds for taxes already paid. Therefore, we conclude that the trial court properly rejected the plaintiff's contention that it could bring its claim for a refund under the 4-R act, albeit on the alternative ground that the plaintiff's claim falls outside the scope of the 4-R act because that act empowers courts to provide only injunctive or declaratory relief.

II

In light of our conclusion that the 4-R act does not permit the plaintiff to assert its claim for a refund, we turn next to the plaintiff's argument that such a remedy is permitted under state law. Because the 4-R act does not allow the plaintiff to assert its claim for a refund, the plaintiff must demonstrate that the legislature has permitted the plaintiff to obtain the relief that it seeks pursuant to state law. The plaintiff contends that it may seek a refund from the state because § 12-597, which permits taxpayers to appeal to the Superior Court from decisions of the commissioner regarding the petroleum tax, establishes that the legislature has waived the state's immunity from such claims. The plaintiff argues that, contrary to the claim of the commissioner, it is entitled to seek a refund of the amount of the petroleum tax paid by the distributor on the distributor's gross earnings from the sale of petroleum products to the plaintiff because the distributor billed the plaintiff for

*Fe Railway Co.* v. *California State Board of Equalization,* 102 F.3d 425, 427 (9th Cir. 1996), cert. denied, 528 U.S. 1114, 120 S. Ct. 930, 145 L. Ed. 2d 810 (2000). Because the District Court provided no authority or analysis for its decision, and because the decision was not subject to appellate review, we do not find this case persuasive to our analysis.

the amount of this tax.[18] Because the plaintiff paid the distributor the amount of the distributor's petroleum tax, it argues that it has assumed the economic burden of the tax and is therefore a taxpayer within the meaning of § 12-597. The commissioner argues that the plaintiff may not bring this claim under § 12-597 because that statute permits only "taxpayers" to appeal from decisions of the commissioner regarding the petroleum tax and the plaintiff in this case is not a taxpayer. In support of this argument, the commissioner asserts that it is irrelevant that the distributor billed the plaintiff for the amount of the tax because the petroleum tax statutes explicitly provide that the tax is levied on and collectible only from the distributor and not the purchaser. Because the plaintiff was not liable for the tax and did not pay the tax to the department, the commissioner maintains that the plaintiff cannot be considered a "taxpayer" within the meaning of § 12-597. We agree with the commissioner.

Because the plaintiff has asserted a claim against the state seeking money damages from the state treasury and is contending that the state has statutorily waived its immunity, we first set forth the well established principles governing statutory waivers of sovereign immunity.[19] "[A] litigant that seeks to overcome the

---

[18] In addition to its argument that it is a "taxpayer" within the meaning of § 12-597, the plaintiff also argues that any requirement of taxpayer status in that statute has been abrogated by the 4-R act such that any rail carrier can appeal from a decision of the commissioner. We already have concluded, however, that the 4-R act abrogated the state's immunity from claims seeking injunctive or declaratory relief only and not from claims seeking refunds for taxes already paid. Therefore, we need not address this argument.

[19] Although this case implicates the doctrine of sovereign immunity, and the commissioner specifically raised that doctrine in support of its motion to dismiss, we note that, for the same reason that sovereign immunity bars the plaintiff's claim, the plaintiff's claim similarly could be dismissed on the basis of the plaintiff's lack of standing to appeal under § 12-597 because the plaintiff cannot meet the requirements of that statute. See, e.g., *Brown & Brown, Inc.* v. *Blumenthal*, 288 Conn. 646, 654, 954 A.2d 816 (2008) ("[t]he right of appeal is accorded only if the conditions fixed by statute and the rules of court for taking and prosecuting the appeal are met" [internal quotation marks omitted]).

presumption of sovereign immunity [pursuant to a statutory waiver] must show that . . . the legislature, either expressly or by force of a necessary implication, statutorily waived the state's sovereign immunity . . . . In making this determination, [a court shall be guided by] the well established principle that statutes in derogation of sovereign immunity should be strictly construed. . . . [When] there is any doubt about their meaning or intent they are given the effect which makes the least rather than the most change in sovereign immunity." (Internal quotation marks omitted.) *DaimlerChrysler Corp.* v. *Law*, supra, 284 Conn. 711–12. Furthermore, "because such statutes are in derogation of the common law, [a]ny statutory waiver of immunity must be narrowly construed . . . and its scope must be confined strictly to the extent the statute provides." (Citation omitted; internal quotation marks omitted.) *Mahoney* v. *Lensink*, 213 Conn. 548, 555–56, 569 A.2d 518 (1990). "We conduct this inquiry mindful that [an appeal pursuant to § 12-597 may require] that the [commissioner] refund certain taxes . . . thereby imposing a monetary obligation on the sovereign, and thus it is essential for its requirements to be satisfied." (Citation omitted.) *DaimlerChrysler Corp.* v. *Law*, supra, 716.

Whether the legislature has waived the state's sovereign immunity raises a question of statutory interpretation. See, e.g., *First Union National Bank* v. *Hi Ho Mall Shopping Ventures, Inc.*, 273 Conn. 287, 291, 869 A.2d 1173 (2005). General Statutes § 1-2z provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." In accor-

dance with these principles, we turn to the text of the statute.

The text of § 12-597 imposes a requirement of taxpayer status on any party seeking to appeal from a decision of the commissioner regarding the petroleum tax. General Statutes § 12-597 provides in relevant part: "Any *taxpayer* aggrieved because of any order, decision, determination or disallowance of the [c]ommissioner . . . made in relation to the [petroleum] tax imposed under section 12-587 may . . . take an appeal therefrom to the superior court . . . ." (Emphasis added.) The language expressly grants a right to appeal only to a "taxpayer" who is aggrieved by a decision of the commissioner regarding the petroleum tax; it does not grant such a right to anyone else. Therefore, to bring an appeal pursuant to this provision, the plaintiff must demonstrate that it is an aggrieved "taxpayer," as that term is used in the statute. See, e.g., *Daimler-Chrysler Corp.* v. *Law*, supra, 284 Conn. 716–17 (concluding that plaintiff was not " 'taxpayer' " within meaning of General Statutes § 12-422, another tax appeal statute, and therefore "did not fall within the class of persons . . . for whom the legislature waived sovereign immunity").

Section 12-597 and the remaining provisions of the chapter governing the petroleum tax do not define the term "taxpayer," and, therefore, we construe that term according to its common usage. See, e.g., *Potvin* v. *Lincoln Service & Equipment Co.*, 298 Conn. 620, 633, 6 A.3d 60 (2010) ("When a statute does not provide a definition, words and phrases in a particular statute are to be construed according to their common usage. . . . To ascertain that usage, we look to the dictionary definition of the term." [Internal quotation marks omitted.]); see also General Statutes § 1-1 (a). When a statute has failed to define the term "taxpayer," we generally have used the definition that a taxpayer is "one that pays or

is liable for a tax." (Internal quotation marks omitted.) *Bell Atlantic NYNEX Mobile, Inc.* v. *Commissioner of Revenue Services*, 273 Conn. 240, 256 n.16, 869 A.2d 611 (2005), quoting Merriam-Webster's Collegiate Dictionary (10th Ed. 1993); accord *DaimlerChrysler Corp.* v. *Law*, supra, 284 Conn. 716; see also Webster's Third New International Dictionary (defining "taxpayer" as "one that pays or is liable to pay a tax").

Using this definition, we previously have concluded that the term "taxpayer" generally includes only those individuals or entities that are legally required to pay or collect the amount of a tax and that the term "taxpayer" does not include those individuals or entities that merely assume the intended taxpayer's economic tax burden. See *DaimlerChrysler Corp.* v. *Law*, supra, 284 Conn. 716–17. In *DaimlerChrysler Corp.*, we concluded that the plaintiff automobile manufacturer (manufacturer) could not establish a right to appeal from the commissioner's rejection of a request for a refund of state sales tax that it had paid to consumers pursuant to the state's lemon law because it was not a taxpayer, even though it had assumed the economic burden of the tax that originally was collected from the consumer. See id., 703–704, 716–17. In that case, the manufacturer refunded all costs to consumers who had returned their defective automobiles, including amounts that the consumer had paid to satisfy this state's tax on the retail sale of automobiles. Id., 705. The retail sales tax is imposed on retailers, but retailers collect the amount of the tax from consumers, generally at the time of the sale. See General Statutes § 12-408 (1) and (2). Although the manufacturer was neither the retailer that collected the tax at the time of the sale nor the consumer required to pay the tax, it nevertheless filed a request with the commissioner for a refund of the amounts that it had paid to consumers after they had returned the defective automobiles to reimburse the consumers for their pay-

ment of the tax, suggesting that it was entitled to such a refund because it had assumed the economic burden of the tax. See id., 707. The commissioner denied the request; see id., 706; and the manufacturer appealed to the trial court, which rendered judgment dismissing the manufacturer's appeal, in part because the manufacturer was not a "taxpayer" within the meaning of § 12-422, the sales tax appeals statute. Id., 709. We upheld the trial court's decision because, although the manufacturer had assumed the consumers' economic burden of the sales tax, the manufacturer was not a taxpayer in that it was neither the consumer who purchased the automobile nor the retailer that sold it, and, therefore, it was not legally obligated to collect or pay the sales tax. See id., 716–17; see also id., 717 ("because the [manufacturer] alleges neither that it was the purchaser of the vehicles subject to the sales tax . . . nor that it was responsible for the payment of the original sales tax at the time of the original purchase giving rise to the sales tax, we cannot conclude that it was an aggrieved taxpayer under § 12-422").

Thus, consistent with the definition of taxpayer and our decision in *DaimlerChrysler Corp.*, we must determine whether the plaintiff in the present case was legally liable either to pay or collect the amount of the petroleum tax. Because the answer to this question is not manifest in § 12-597 alone, we look to other provisions in chapter 227 of the General Statutes—the chapter governing the petroleum tax—to determine whether the plaintiff is a payer of the petroleum tax. See General Statutes § 1-2z (requiring courts construing statute to consider its relationship to other statutes).

Other provisions in chapter 227 demonstrate that a purchaser of petroleum products is not a payer of the petroleum tax because it is not liable for and does not pay that tax. The petroleum tax is imposed on and collected only from distributors of petroleum products,

not the purchasers of such products. General Statutes § 12-587 (b) (1) provides in relevant part that "any company which is engaged in the refining or distribution, or both, of petroleum products and which distributes such products in this state shall pay a quarterly tax on its gross earnings derived from the first sale of petroleum products within this state. . . ." With one exception that does not impact our resolution of this appeal,[20] nothing in § 12-587, or any other provision of chapter 227, imposes this tax on the purchaser of petroleum products, and no provision requires the purchaser to pay such tax. Because purchasers of petroleum products are not liable for and are not required to pay the petroleum tax, we cannot conclude that such purchasers are taxpayers within the meaning of § 12-597.

Indeed, the legislature included a specific statutory provision expressing its intent that the petroleum tax is not to be construed as a tax on the purchaser. General Statutes § 12-599 (a) provides: "It is not the intention of the General Assembly that the tax imposed under section 12-587 be construed as a tax upon purchasers of petroleum products, but that such tax shall be levied upon and be collectible from petroleum companies as defined in said section 12-587, and that such tax shall constitute a part of the operating overhead of such companies." This statutory command that we not construe the petroleum tax as being "levied upon" the purchasers of petroleum products precludes us from concluding that such purchasers are liable for the tax.

---

[20] The petroleum tax is imposed on the purchaser, rather than the distributor, when the purchaser buys the petroleum product from an out-of-state distributor for resale, use or consumption within this state. In such case, the out-of-state distributor is not liable to pay the petroleum tax to this state. See General Statutes § 12-587 (c) (1). It is undisputed, however, that the present case involves the purchase of petroleum products from an in-state distributor who was subject to the petroleum tax. Therefore, the exception set forth in § 12-587 (c) (1) has no bearing on the merits of this appeal.

Furthermore, we cannot construe the petroleum tax as being paid by the purchasers of such products because we may construe the tax as being collectible from only distributors of petroleum products and not from purchasers at the time of sale. Compare General Statutes § 12-599 (a) (petroleum tax to be construed as tax on and collectible from seller only) with General Statutes § 12-408 (1) and (2) (retail sales tax imposed on seller but collectible from purchaser). Thus, to conclude that the purchaser of petroleum products is a taxpayer within the meaning of § 12-597 would contradict the intent of the legislature, as expressed in § 12-599 (a), and such a construction would violate both the plain meaning rule; see General Statutes § 1-2z; and the doctrine of sovereign immunity. See *DaimlerChrysler Corp.* v. *Law*, supra, 284 Conn. 717; see also id., 716 ("[a]ny statutory waiver of immunity must be narrowly construed . . . and its scope must be confined strictly to the extent the statute provides" [internal quotation marks omitted]).

In addition to expressing the legislature's intent regarding the construction of the provisions concerning the imposition of the petroleum tax, § 12-599 also prohibits petroleum distributors from passing on the cost of the petroleum tax to purchasers by raising the prices of their petroleum products in this state. See General Statutes § 12-599 (b) (prohibiting petroleum companies from raising "wholesale rack price" of their petroleum products "by an amount higher than the average amount by which such company raises its wholesale rack price for such product in all ports on the eastern coast of the United States"). This provision is commonly referred to as an "anti-passthrough provision . . . ." *Mobil Oil Corp.* v. *Dubno*, 639 F.2d 919, 920 (2d Cir.), cert. denied, 452 U.S. 967, 101 S. Ct. 3122, 69 L. Ed. 2d 980 (1981). Subsequent to this state's adoption of the petroleum tax, which included the anti-passthrough provision; see

Public Acts 1980, No. 80-71, §§ 1 and 13 (P.A. 80-71); the United States District Court for the District of Connecticut declared the anti-passthrough provision of P.A. 80-71, § 13, unconstitutional on the ground that it violated the supremacy clause of the United States constitution; see U.S. Const., art. VI, cl. 2; inasmuch as the federal government had preempted the states from regulating prices of petroleum products. *Mobil Oil Corp.* v. *Dubno*, 492 F. Sup. 1004, 1013–14 (D. Conn. 1980), aff'd in part and appeal dismissed in part, 639 F.2d 919 (2d Cir.), cert. denied, 452 U.S. 967, 101 S. Ct. 3122, 69 L. Ed. 2d 980 (1981). After the District Court declared the state anti-passthrough provision unconstitutional, petroleum products distributors began to pass the cost of the petroleum tax on to the purchasers of such products, often in the form of a separate charge, itemized on a sales invoice. See *Texaco Refining & Marketing Co.* v. *Commissioner of Revenue Services*, 202 Conn. 583, 585, 522 A.2d 771 (1987).

The fact that the anti-passthrough provision in § 12-599 (b) has been held to be unconstitutional and that distributors are passing on the cost of the petroleum tax to purchasers does not, however, alter the legislature's intent, as expressed in § 12-599 (a), that the petroleum tax is not to be construed as a tax on purchasers. Indeed, we previously have addressed and rejected such an argument. See id., 595 ("the unenforceability of § 12-599 [b], for constitutional reasons, does not disturb the legislative intent, manifested in § 12-599 [a]"). In *Texaco Refining & Marketing Co.*, this court concluded that the fact that the petroleum tax is passed on to purchasers does not alter the original intent of the legislature to impose the tax on the distributor's gross earnings and to collect the tax only from the distributor and not from the purchaser at the time of the sale. See id., 598 ("[W]e conclude . . . that § 12-587 includes within 'gross earnings' the amounts that the [distributor] has

collected as taxes passed through to its customers. This result is not altered by the fact that, for its own accounting purposes, the [distributor] billed its customers separately for the sales price of its petroleum products and for the taxes it collected from them."). Because we are obligated to abide by the intent of the legislature, as expressed in § 12-599 (a), we cannot construe the term "taxpayer" in § 12-597 to include purchasers of petroleum products. Therefore, we conclude that the legislature has not waived the state's immunity and allowed purchasers of petroleum products to appeal from a decision of the commissioner regarding the petroleum tax.[21]

In the present case, the plaintiff has alleged only that it is a purchaser of petroleum products, not that it is a distributor of such products. Although the plaintiff alleges that it paid the distributor the amount of the tax for which the distributor was liable, the plaintiff was neither liable for the tax, nor did it pay the tax. Therefore, any amounts paid to the distributor in anticipation of the distributor's tax liability constitute only an amount that the plaintiff paid in consideration for the petroleum products that it purchased from the distributor. See *Texaco Refining & Marketing Co.* v. *Commissioner of Revenue Services*, supra, 202 Conn. 598. That the distributor used this consideration to cover a portion of its tax liability does not make the plaintiff a

[21] Although the plaintiff argues that it should be considered a taxpayer because the petroleum tax is passed through to the purchaser and that the legislature's intended scheme is no longer workable, we need not determine whether the present scheme represents good tax policy. The legislature chose the current scheme and has elected not to change it in the thirty-one years since the United States District Court for the District of Connecticut declared this state's anti-passthrough provision unconstitutional in *Mobil Oil Corp.* v. *Dubno*, supra, 492 F. Sup. 1013–14. Our role is only to construe the statutes as provided by the legislature and not to construe them in a manner that we think represents better policy; policy decisions must be left to the legislature. This principle is especially strong in cases involving waiver of sovereign immunity.

taxpayer. See *DaimlerChrysler Corp.* v. *Law*, supra, 284 Conn. 716–17. Consistent with the expressed intent of the legislature and our case law, we conclude that the plaintiff is not a "taxpayer" within the meaning of § 12-597 and cannot appeal from the decision of the commissioner to the Superior Court pursuant to that statute.[22]

### III

The plaintiff next claims that the trial court incorrectly concluded that it could not maintain its appeal under § 12-33 on the ground that that statute was inapplicable to the plaintiff's claim because § 12-597, rather than § 12-33, governs any appeal from a decision of the

[22] In support of its argument that it should be permitted to appeal pursuant to § 12-597, the plaintiff claims that there are inconsistencies between the language in General Statutes § 12-589 (a) (1), which permits "[a]ny company believing that it has overpaid [the petroleum tax]" to request a refund from the commissioner, and the language in § 12-597, which permits only a "taxpayer" to appeal from a decision of the commissioner regarding refund requests. The plaintiff claims that, if the legislature has permitted any company to request a refund under § 12-589, any company should therefore be permitted to appeal from a decision concerning that refund request notwithstanding any taxpayer status requirement in § 12-597. This perceived inconsistency between these statutes disappears, however, when those sections are read together with the statutory provision that imposes the tax, namely, § 12-587. Section 12-587 (b) (1) imposes the petroleum tax on "any company" that distributes petroleum in this state. General Statutes § 12-589 (a) (1), in turn, provides that "[a]ny company believing that it has overpaid any taxes imposed under section 12-587" may request a refund. Thus, the reference in § 12-589 (a) (1) to "[a]ny company" refers only to those companies that are required to pay the tax imposed by § 12-587 (b) (1) and are therefore considered taxpayers for the purpose of taking an appeal pursuant to § 12-597. The language of §§ 12-589 (a) (1) and 12-597 also is consistent in light of the legislature's stated intent that only those companies subject to the petroleum tax under § 12-587 are to be considered taxpayers. General Statutes § 12-599 (a). Indeed, the plaintiff acknowledges that this inconsistency is corrected when these provisions are interpreted as a tax only on distributors, as the legislature originally intended. For the foregoing reasons, we conclude that, although the plaintiff filed its request for a refund pursuant to § 12-589, and those procedures govern such a request, the plaintiff was not entitled to a refund under that provision because it cannot establish that it was a taxpayer.

commissioner regarding the petroleum tax. In support of this claim, the plaintiff argues that, if it cannot appeal under § 12-597 because it is not a taxpayer within the meaning of that statute, it nevertheless may appeal from the commissioner's decision under § 12-33, which the plaintiff characterizes as a "general appeal statute . . . ." The commissioner responds that the trial court correctly concluded that § 12-597 is the controlling statute because that statute specifically applies to appeals from decisions of the commissioner regarding the tax at issue in the present case. In support of this argument, the commissioner relies on the provisions of chapter 227 governing refund request procedures and argues that these procedures specifically require that any appeal from a decision of the commissioner regarding the petroleum tax be taken pursuant to the provisions of § 12-597 and not § 12-33. We agree with the commissioner.

Consistent with § 1-2z, we begin with the text of § 12-33. General Statutes § 12-33 provides in relevant part: "Any . . . company aggrieved by the action of the commissioner may, within one month from the time of such action, make application in the nature of an appeal therefrom to the superior court of the judicial district in which such applicant is located . . . ." Although the text of § 12-33 appears to permit the appeal in the present case insofar as the plaintiff is a "company aggrieved by the action of the commissioner," this does not end our inquiry.

Section 1-2z also directs us to consider the relationship of this statute to other statutes. According to the plaintiff, it requested a refund of the petroleum tax pursuant to § 12-589, which prescribes the procedures applicable to a request for a refund of an amount paid for the petroleum tax. Because the claim in the present case involves a request for a refund of an amount paid for the petroleum tax, we look to § 12-589 and the proce-

dures prescribed therein to assist in our determination of whether the plaintiff may appeal from the decision of the commissioner pursuant to § 12-33 instead of § 12-597.

A review of the procedures in § 12-589 demonstrates that, notwithstanding the text of § 12-33, which otherwise appears to apply to the present case, the legislature specifically has required that a decision of the commissioner regarding a petroleum tax refund request be appealed pursuant to § 12-597. General Statutes § 12-589 (a) (1) provides in relevant part: "Any company believing that it has overpaid any taxes imposed under section 12-587 [the statute imposing the petroleum tax] may file a claim for [a] refund in writing with the commissioner . . . ." Section 12-589 further specifies the procedures for the handling of any claims for a refund. Specifically, the statute provides that, in the event that the commissioner denies a request for a refund, "the action of the commissioner on the claimant's protest *shall be final* upon the expiration of one month from the date on which he mails notice of his action to the claimant *unless within such period the claimant seeks judicial review of the commissioner's determination pursuant to section 12-597.*" (Emphasis added.) General Statutes § 12-589 (a) (4). This provision expressly provides that judicial review of a decision of the commissioner concerning a refund request filed pursuant to § 12-589 must be obtained pursuant to § 12-597. Indeed, § 12-589 (a) (4) makes clear that, unless a party claiming a refund takes an appeal pursuant to § 12-597, the decision of the commissioner is "final" as to the "claimant's" request for a refund.[23] We conclude that this provision

[23] In this context, we interpret the term "final" to mean that no further proceedings on the request for a refund are available except for those described in the statute.

Additionally, we interpret the term "claimant" in § 12-589 (a) (4) to include any entity that has filed a claim for a refund of the petroleum tax, irrespective of whether that entity is actually entitled to a refund. The plaintiff in the present case had filed a claim for a refund of the petroleum tax and therefore is a "claimant" within the meaning of § 12-589 (a) (4). For this reason, and

strongly supports the conclusion that the legislature intended for § 12-597, rather than § 12-33, to be the provision governing an appeal from the decision of the commissioner concerning a request for a refund of the petroleum tax.[24]

for the myriad of reasons set forth in footnote 24 of this opinion, we disagree with the conclusion of the dissent that § 12-589 (a) (4), and its requirement that a claimant appeal pursuant to § 12-597, does not apply to the plaintiff because the plaintiff is not a taxpayer. This conclusion is inconsistent with the broad language of § 12-589, which does not limit the applicability of that statute to taxpayers only.

[24] The dissent argues that the plaintiff may appeal pursuant to § 12-33 because the procedures set forth in chapter 227, the chapter of the General Statutes governing the petroleum tax, do not apply to the plaintiff or to the plaintiff's claims. The dissent bases this conclusion in large part on its "determination that the plaintiff's claim is beyond the purview of the petroleum tax chapter and, therefore, [that] its appeal is not governed by the procedures set forth in § 12-597, which are properly reserved for 'taxpayer[s] . . . .' " We respectfully disagree with the conclusion of the dissent for several reasons.

First, the dissent's argument does not give appropriate weight to the nature of the relief that the plaintiff clearly sought. The dissent reasons that chapter 227, and specifically § 12-597, has no bearing on the plaintiff's claim because the plaintiff's request for a refund was not based on a claim that "it had overpaid the tax" but, rather, was intended "to challenge the unlawfulness of the petroleum tax as applied to its transactions with the distributor." Although the plaintiff's claim for a refund was based on an alleged violation of the 4-R act, this does not alter the fact that the plaintiff is seeking a refund of the tax that the distributor paid to the department. The plaintiff has not brought a claim for a declaratory judgment or any other prospective relief. The procedures set forth in chapter 227 for obtaining such a refund are not limited only to claims for incorrect assessments but apply to any claim that the tax was overpaid. General Statutes § 12-589.

Second, to the extent that the dissent does not consider the provisions of chapter 227 relevant in concluding that § 12-33 plainly and unambiguously applies to the plaintiff's claim because the plaintiff is not a "taxpayer" within the meaning of § 12-597, we disagree. To the contrary, the provisions of chapter 227 apply to the plaintiff because the plaintiff's claim involves a request for a refund of the petroleum tax, and chapter 227 contains specific procedures that govern such a request. Cf. *Commission on Human Rights & Opportunities* v. *Truelove & Maclean, Inc.*, 238 Conn. 337, 358, 680 A.2d 1261 (1996) (examining subject of plaintiff's claims in concluding that statute more specific to plaintiff's claims displaced more general statute that otherwise would have applied in absence of specific statute). The plaintiff requested a refund from the commissioner pursuant to these procedures, namely, those in § 12-589, and that statute provides that judicial review of a decision of the commissioner pursuant to § 12-589 shall be made pursuant to § 12-597. Simply because the plaintiff is unable to satisfy the requirements of §§ 12-589 and 12-597 insofar as it is not a taxpayer does not make those provisions any less applicable to the plaintiff's claim.

This conclusion is supported by the well established principle of statutory interpretation that requires courts to apply the more specific statute relating to a particular subject matter in favor of the more general statute that otherwise might apply in the absence of the specific

Third, the dissent's conclusion that §§ 12-33 and 12-597 both apply to claims for refunds regarding the petroleum tax effectively nullifies § 12-597. As we more fully describe hereinafter in this opinion, if § 12-33 applies to such appeals, there would have been no reason for the legislature to enact § 12-597 when it established the petroleum tax because § 12-597 does not add any substance or procedure not already contained in § 12-33. The only material difference between the two statutes is that § 12-597 limits the category of appellants to taxpayers. The dissent's conclusion would, however, eviscerate the limitation imposed on standing under § 12-597 by allowing any company to bypass that limitation simply by taking an appeal pursuant to § 12-33.

Fourth, the dissent's conclusion is inconsistent with our prior decision in *Texaco Refining & Marketing Co.* v. *Commissioner of Revenue Services*, supra, 202 Conn. 595–96, and our conclusion in part II of this opinion, with which the dissent agrees. Relying on our interpretation in that case of the legislature's intent in § 12-599 (a) that the petroleum tax not be construed as a tax on purchasers of petroleum products, we concluded in part II of this opinion that the plaintiff, as a purchaser of petroleum products, cannot be considered a payer of the petroleum tax or a "taxpayer" for purposes of § 12-597. If the plaintiff is not a taxpayer, it makes little sense to allow it to request a refund of a tax that it did not pay, especially when the department did not receive from the plaintiff any payment of or tax returns reporting this tax. As we made clear in *Texaco Refining & Marketing Co.* and in part II of this opinion, simply because the distributor billed the plaintiff for the amount of the tax the distributor eventually would pay does not make the plaintiff a taxpayer, and we are prohibited by § 12-599 (a) from construing the plaintiff's payment of money to the distributor for this purpose as a payment of the petroleum tax. Thus, the only entity that may request a refund of this tax is the taxpayer, which is not the plaintiff. See *DaimlerChrysler Corp.* v. *Law*, supra, 284 Conn. 716–17.

Fifth, the dissent's conclusion conflicts with principles of sovereign immunity to the extent that it contradicts the text of § 12-589, which directs that appeals from the commissioner's decision concerning the petroleum tax shall be taken pursuant to § 12-597. The doctrine of sovereign immunity requires us to limit the scope of a waiver of immunity to the extent expressly provided by statute. See id. Section 12-589 provides for judicial review pursuant to § 12-597 only. To the extent that the dissent expands this limitation by concluding that a party also may seek judicial review under § 12-33, we disagree.

Sixth, we disagree with the dissent's conclusion because, not only does § 12-33 currently not apply to claims for refunds of the petroleum tax, but it never has applied to such claims. When the legislature enacted the petroleum tax, it included § 12-597 as the specific appeal provision applicable to that tax. As we discuss more fully hereinafter in this opinion, § 12-33 was enacted prior to § 12-597 and applies to an entirely different set of taxes.

statute. "[I]t is a well-settled principle of construction that specific terms covering the given subject matter will prevail over general language of the same or another statute which might otherwise prove controlling. . . . The provisions of one statute which specifically focus on a particular problem will always, in the absence of express contrary legislative intent, be held to prevail over provisions of a different statute more general in its coverage." (Internal quotation marks omitted.) *Tappin* v. *Homecomings Financial Network, Inc.*, 265 Conn. 741, 760, 830 A.2d 711 (2003).

The text of the two statutes at issue and their respective locations in the state tax code demonstrate that § 12-597 more specifically applies to the tax at issue in the present case. Section 12-597 is found within the chapter of the tax code dedicated to the petroleum tax, namely, chapter 227, and § 12-597 specifies the requirements and procedures for appeals from a decision of the commissioner "made in relation to the tax imposed under section 12-587," which is the provision imposing the petroleum tax.[25] Section 12-33, on the other hand, is located in the first chapter of the tax code, namely, chapter 201, which contains numerous provisions relating to the commissioner and the department generally, as well as several specific provisions unrelated to the petroleum tax. Nothing in the text of § 12-33 indicates that it is specifically applicable to the petroleum tax; indeed, nothing in chapter 227, the chapter governing the petroleum tax, refers to § 12-33 or indicates in any way that § 12-33 has any relevance to appeals from the commissioner's decision concerning the petroleum tax. Moreover, § 12-33 lacks any language expressing that the legislature intended § 12-33 to apply even though there might be other, more specific, appeal

---

[25] Moreover, the legislature enacted the provision that subsequently was codified at § 12-597 in the same public act that established the petroleum tax. See P.A. 80-71, § 11; see also P.A. 80-71, § 1 (establishing petroleum tax).

provisions. For example, if the legislature had intended § 12-33 to operate as a general appeal provision, we would expect to see some reference in the text of § 12-33 that it should apply notwithstanding any other provision of law. See, e.g., General Statutes § 12-88a (b) (providing that section shall apply "[n]otwithstanding any other provision of the general statutes"). Such language is absent in § 12-33. Thus, in the absence of any clear legislative intent to the contrary, we conclude that § 12-597, the provision that is more specific with respect to appeals from the commissioner's decision concerning the petroleum tax, should apply over § 12-33.

We also are compelled to conclude that § 12-597 should apply instead of § 12-33 by virtue of another well established principle of statutory construction that requires us to interpret and apply statutes so as not to render any statutory provision superfluous. We presume that "the legislature did not intend to enact meaningless provisions. . . . [S]tatutes must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant . . . ." (Internal quotation marks omitted.) *Semerzakis* v. *Commissioner of Social Services*, 274 Conn. 1, 18, 873 A.2d 911 (2005). The plaintiff argues that §§ 12-33 and 12-597 apply simultaneously as alternative appeal provisions. This reading would, however, render § 12-597 superfluous because § 12-597 does not add any substantive rights or procedures that do not already exist by virtue of § 12-33, which was enacted prior to § 12-597. See General Statutes (Rev. to 1958) § 12-33; see also General Statutes (1949 Rev.) § 1711 (predecessor to § 12-33); cf. P.A. 80-71, § 11, codified as amended at General Statutes § 12-597. Indeed, according to the plaintiff's interpretation of the statutory scheme, if the legislature had not enacted § 12-597, § 12-33 would nevertheless have permitted any aggrieved company to appeal from any decision of the commissioner, including those companies

qualifying as taxpayers that currently may appeal under § 12-597. Because, under the plaintiff's interpretation, any company that can appeal under § 12-597 already could have appealed under § 12-33, and because § 12-597 does not add any substantive right or procedure that did not already exist in § 12-33, there would have been no reason for the legislature to have enacted § 12-597. Therefore, this principle supports the conclusion that the legislature intended § 12-597 and not § 12-33 to be the applicable statute for appeals from the commissioner's decision concerning the petroleum tax.[26]

Moreover, the legislature has enacted specific appeal provisions for every kind of tax in the state tax code under the jurisdiction of the commissioner. See, e.g., General Statutes § 12-237 (appeals regarding corporation business tax); General Statutes § 12-268*l* (appeals regarding railroad company, community antenna television system, public utility company and public service company taxes); General Statutes § 12-422 (appeals regarding sales and use taxes); General Statutes § 12-448 (appeals regarding alcoholic beverage tax); General Statutes § 12-463 (appeals regarding motor vehicle fuels tax); General Statutes § 12-521 (appeals regarding dividends, interest income and capital gains taxes); General Statutes § 12-554 (appeals regarding admissions, cabaret and dues taxes). All of these provisions provide

[26] Furthermore, because there is no substantive difference between the procedures in § 12-33 and those in § 12-597, we respectfully disagree with the dissent that the legislature intended to "channel" appeals by taxpayers through § 12-597 and permit all other companies to appeal pursuant to § 12-33 and that this demonstrates that § 12-597 is not superfluous.

Indeed, although the language of the two statutes is different insofar as § 12-33 requires parties to appeal to their local judicial district and § 12-597 requires parties to appeal to the judicial district of New Britain, the plaintiff acknowledges that this difference actually may be superseded by another statute. General Statutes § 12-39*l* (b) empowers the chief court administrator to designate the judicial district to which all tax appeals should be directed. The judicial district of New Britain is currently the location of the tax session of the Superior Court to which tax appeals are to be directed. Therefore, despite the difference in language, it is not necessarily true that appeals under the two statutes will be heard in different courts.

essentially the same appeal procedures as § 12-33, except they, like § 12-597, narrow the categories of permissible appellants. For the same reason that § 12-597 would be rendered superfluous, all of these statutes and their respective limitations on standing to appeal also would be rendered superfluous under both the plaintiff's and the dissent's interpretation of the statutory scheme. In view of the extent to which the legislature has carefully enacted specific appeal provisions for each kind of tax specified in the state tax code, we cannot conclude that § 12-597 and similar statutes are merely unnecessary surplus.

Finally, we disagree with the plaintiff's conclusory argument that "a more reasonable reasoning [of § 12-33] is that the legislature foresaw a situation [in which] a tax is illegally or erroneously collected by the commissioner from a company or town [that] may not fall into the strict definition of a 'taxpayer' for the purposes of the specific tax statute and, in response, wrote an intentionally broad statute to provide an avenue of appeal to those companies and towns." To the extent that the plaintiff and the dissent are asserting that the legislature enacted § 12-33 to be an alternative to the specific appeal statutes in the state tax code, such a claim is not supported by the genealogy of the statute. What is now § 12-33 originally was enacted to permit appeals from "action[s] of the state board of equalization," and not from actions of the tax commissioner. Public Acts 1917, c. 186, § 1; see also *Connecticut Mutual Life Ins. Co.* v. *Rogers*, 113 Conn. 14, 15–17, 154 A. 246 (1931) (resolving appeal from state board of equalization brought pursuant to General Statutes [1930 Rev.] § 1124, which is predecessor to § 12-33). At that time, the state board of equalization had the power to equalize property tax assessments by municipalities; see General Statutes (1930 Rev.) § 1108; and to oversee taxes on the gross earnings of certain types of compa-

nies, such as the tax on gross earnings of water, gas, electric and power companies. See General Statutes (1930 Rev.) § 1119. A predecessor to § 12-33, namely, General Statutes (1930 Rev.) § 1124, permitted appeals from the board of equalization and provided in relevant part: "Any town, company or national banking association claiming to be aggrieved by the action of the board of equalization may . . . appeal therefrom to the superior court . . . ." At the same time, the tax commissioner had authority over taxes that were different from those within the authority of the state board of equalization, such as the corporation tax; General Statutes (1930 Rev.) § 1327; and each of the taxes that were within the authority of the tax commissioner had their own specific appeal provisions. See, e.g., General Statutes (1930 Rev.) § 1335 (permitting appeals from decisions of tax commissioner regarding corporation tax). Thus, when originally enacted, the purpose of the predecessor to § 12-33 was to permit appeals from an action of the state board of equalization, not from an action or decision of the tax commissioner.

The predecessor statute to § 12-33 did not apply to actions of the tax commissioner until 1937, when the legislature abolished the state board of equalization and transferred its powers to the tax commissioner. See Public Acts 1937, c. 238, § 13, codified at General Statutes (1939 Sup.) § 317e. The legislature accomplished this transfer simply by striking out references to the state board of equalization and replacing them with references to the tax commissioner, including the reference to the board of equalization in the statute governing appeals from an action of the board. See General Statutes (1939 Sup.) § 317e ("[a]ny town or company claiming to be aggrieved by the action of the tax commissioner may . . . appeal therefrom to the superior court"), amending General Statutes (1930 Rev.) § 1124 (governing appeals from action of state board of equal-

ization). The legislature did not repeal the specific appeal provisions in other parts of the state tax code that already provided for appeals from decisions of the tax commissioner regarding certain taxes. Thus, those specific appeal provisions remained applicable to appeals from decisions of the tax commissioner regarding the specific taxes that they addressed; see, e.g., General Statutes (1949 Rev.) § 1917 (appeals regarding corporation tax); whereas the predecessor to § 12-33, namely, General Statutes (1949 Rev.) § 1711, continued to be the applicable appeal provision for decisions concerning those taxes formerly under the oversight of the state board of equalization. Since the elimination of the state board of equalization, the legislature subsequently has amended those tax provisions formerly under the supervision of that board to provide specific appeal provisions for each of those taxes. See, e.g., Public Acts 1961, No. 604, § 27 (adding appeal provision for, inter alia, utility company tax). The legislature also has enacted specific appeal provisions for every new tax in the state tax code. See, e.g., General Statutes § 12-312 (permitting appeals from decision of commissioner regarding cigarette tax). Even though all taxes formerly under the control of the state board of equalization currently have a specific appeal provision apart from § 12-33, and the legislature has included a specific appeal provision for every other tax in the state tax code, the legislature has not repealed § 12-33, and the text of that provision has largely remained unchanged.[27]

[27] The current text continues to reflect the original purpose of the statute because, in addition to permitting appeals by companies, it also specifically permits appeals by "[a]ny town . . . ." General Statutes § 12-33. Although the dissent omitted this reference in quoting the text of § 12-33 in its opinion, this reference to towns reflects the former power of the state board of equalization, and subsequently the tax commissioner, to equalize a town's property tax assessments. See General Statutes (1930 Rev.) § 1108.

There has been one minor change, however, to the text of § 12-33 since the powers of the state board of equalization were transferred to the tax commissioner. In 1978, the legislature converted the statute's reference of the location of the Superior Court from the "county" in which the appellant was located to "judicial district . . . ." Public Acts 1978, No. 78-280, § 2.

Although § 12-33 no longer governs appeals from decisions regarding those taxes formerly under the oversight of the state board of equalization, it is not left without any purpose because it has since been used to permit appeals from actions of the commissioner regarding taxes or assessments for which the legislature has not provided a specific appeal statute, including those taxes or assessments codified outside the state tax code. See *Circuit-Wise, Inc.* v. *Commissioner of Revenue Services*, 215 Conn. 292, 293–94 and n.2, 576 A.2d 1259 (1990) (resolving appeal brought pursuant to § 12-33 from decision of commissioner concerning hazardous waste tax assessment made in accordance with General Statutes § 22a-132, which did not, at that time, contain specific appeal procedure). Thus, although the purpose of § 12-33 has changed since its original enactment, nothing in the language of § 12-33 or its genealogy demonstrates that the legislature intended it to operate as an alternative to the specific appeal procedures otherwise provided by the legislature.

For the foregoing reasons, we conclude that a person or entity may appeal from a decision of the commissioner regarding the petroleum tax only pursuant to § 12-597 and not pursuant to § 12-33. Because none of the provisions that the plaintiff relies on permits it to assert its claim, we conclude that the trial court properly dismissed the plaintiff's appeal.

The judgment is affirmed.

In this opinion ROGERS, C. J., and NORCOTT, PALMER, McLACHLAN and VERTEFEUILLE, Js., concurred.

EVELEIGH, J., dissenting. I respectfully dissent. I agree with parts I and II of the majority opinion. I respectfully disagree, however, with the majority's con-

clusion in part III of its opinion that the plaintiff, Housatonic Railroad Company, Inc., may not appeal pursuant to General Statutes § 12-33[1] because General Statutes § 12-597,[2] and *not* § 12-33, governs the plaintiff's appeal from the decision of the defendant, the commissioner of revenue services, denying the plaintiff's petroleum tax overpayment claim. Specifically, I disagree that the provisions of the petroleum tax chapter generally; General Statutes § 12-587 et seq.; and § 12-597 specifically, apply to the present appeal and bar the plaintiff from availing itself of the appeal procedure set forth in § 12-33. I would instead conclude that the plaintiff's claim is beyond the purview of the petroleum tax chapter, and, accordingly, that the plaintiff may appeal pursuant to § 12-33.

Like the majority, I acknowledge the governing legal principle that, "[t]o overcome the presumption of sovereign immunity . . . a plaintiff seeking to bring a claim against the state must establish that an exception to the doctrine applies." (Citation omitted; internal quotation marks omitted.) The basis of my disagreement with the majority, however, stems from my conclusion that the plaintiff has established that such an exception exists, namely, § 12-33. I therefore conclude that the plaintiff, as a company aggrieved by an action of the defendant, has standing under § 12-33 to challenge the defendant's

---

[1] General Statutes § 12-33 provides in relevant part: *"Any . . . company* aggrieved by the action of the commissioner may, within one month from the time of such action, make application in the nature of an appeal therefrom to the superior court of the judicial district in which such applicant is located, which shall be accompanied by a citation to said commissioner to appear before said court. . . ." (Emphasis added.)

[2] General Statutes § 12-597 provides in relevant part: *"Any taxpayer* aggrieved because of any order, decision, determination or disallowance of the Commissioner of Revenue Services made *in relation to the tax imposed under section 12-587* may, within one month after service upon the taxpayer of notice of such order, decision, determination or disallowance, take an appeal therefrom to the superior court for the judicial district of New Britain . . . ." (Emphasis added.)

disallowance of its claim for overpayment, because the plaintiff's claim was based on its contention that the petroleum tax was applied to the plaintiff's purchases of petroleum fuel in violation of the Railroad Revitalization and Regulatory Reform Act of 1976 (4-R act), Pub. L. No. 94-210, 90 Stat. 31. Fundamental to this conclusion is my determination that the plaintiff's claim is beyond the purview of the petroleum tax chapter and, therefore, its appeal is not governed by the procedures set forth in § 12-597, which are properly reserved for "taxpayer[s] . . . ." I would therefore conclude that the plaintiff may avail itself of the appeal procedure set forth in § 12-33 and appeal from the defendant's disallowance of its claim as an aggrieved company. Accordingly, I would reverse the judgment of the trial court and remand the case to that court with direction to deny the motion to dismiss and for further proceedings.

I begin by reiterating the portion of the majority's conclusions with which I agree and which, in my view, support the conclusion that the plaintiff has standing as an aggrieved company under § 12-33. First, the majority, contrary to the decision of the trial court, concludes that the 4-R act, which prohibits the state from imposing taxes that discriminate against rail carriers, applies to the petroleum tax at issue in this appeal. The majority further concludes that, under the 4-R act, the plaintiff may not file a claim for overpayment of the taxes it paid in alleged violation of the 4-R act because it only provides for injunctive or declaratory relief. Second, the majority concludes that the plaintiff is ineligible to utilize § 12-597 to appeal from the defendant's disallowance of its claim because the plaintiff is not a "taxpayer" as that word must be construed in the context of the petroleum tax chapter, and specifically with regard to § 12-597.[3] In reaching this conclusion, the majority ana-

---

[3] I am obliged to agree with the conclusion reached in part II of the majority opinion that the plaintiff is not a taxpayer under the petroleum tax statutory scheme, despite the fact that the plaintiff actually bore the

lyzes the statutory scheme and concludes that the only entities that may take an appeal under § 12-597 are distributors and refiners because, it concludes, the key statutory term taxpayer must be interpreted to mean distributors and refiners of petroleum. The plaintiff, as a consumer or purchaser of petroleum, is thus outside the scope of § 12-597 and the petroleum tax statutes.

In summary, the majority concludes that, although the plaintiff was subject to and actually bore the expense of a tax allegedly imposed in violation of federal law prohibiting discriminatory taxation of rail carriers, the plaintiff is without remedy under either the 4-R act, because the 4-R act is prospective and does not provide monetary relief, or under § 12-597, because the plaintiff is not a taxpayer within the specific meaning ascribed to that term in the petroleum tax chapter.

In my view, however, these conclusions do not negate the facts that: (1) the plaintiff bore the burden of the tax, which was specifically itemized on the bills it paid; (2) the plaintiff set forth a colorable claim that the state's former imposition of the petroleum tax on sales of petroleum fuel to rail carriers and simultaneous exemption of sales of fuel to water carriers violated the 4-R act by discriminating against rail carriers like the plaintiff; (3) when the plaintiff raised this issue with the defendant by filing a claim for overpayment of the allegedly improper taxation, the defendant disallowed the claim; and (4) the plaintiff is now attempting, as an

---

burden of the petroleum tax. I agree with the sentiments expressed in footnote 21 of the majority opinion, and further note that it may be better tax policy to permit the entity that actually bears the economic burden to challenge the petroleum tax insofar as it may have the greatest incentive to challenge improper assessments of that tax. Indeed, because of the failure of the anti-passthrough provision in the chapter; General Statutes § 12-599 (b); the distributors of petroleum may collect the amount of the tax from purchasers at the time of sale, as was the case here. Accordingly, the distributors may possess less incentive to bring challenges to improper assessments of the tax.

aggrieved company, to appeal from the defendant's disallowance.

I next briefly reiterate the following relevant facts set forth by the majority and found by the trial court in its memorandum of decision. "During the period from July 1, 2003, through June 30, 2007, [the plaintiff] purchased diesel fuel in Connecticut from Sack Distributors Corporation and its predecessor, Stephen H. Sack, [doing business as] Sack Distributors, in [the city of] Hartford . . . .[4] The diesel fuel purchased from the distributor was used exclusively by [the plaintiff] in its locomotives as part of its interstate freight rail business. The distributor remitted the [petroleum tax], in the amount of $100,176.91, to the [defendant]. The distributor separately billed the plaintiff for the amount of the tax that it had paid to the department of revenue services (department), and the plaintiff paid that amount directly to the distributor. . . . [T]he plaintiff [subsequently] submitted requests to the department for a refund of the money paid for the petroleum tax by the distributor to the department. *The plaintiff based its request for a refund on its claim that the petroleum tax discriminated against it because gross earnings from fuel sold for use . . . [by water carriers] are exempt from the tax, whereas gross earnings from fuel sold to rail carriers are not exempt, in violation of the 4-R act.* The [defendant] denied the plaintiff's request for a refund on the ground that only the distributor, and not the plaintiff, could request a refund because the distributor, rather than the plaintiff, had paid the tax in question."[5] (Emphasis added; internal quotation marks omitted.)

---

[4] I refer hereinafter to Sack Distributors Corporation and Sack collectively as the distributor throughout this dissenting opinion.

[5] Accordingly, the defendant did not weigh the merits of the plaintiff's claim that the petroleum tax was being improperly applied to its transactions with the distributor.

I begin my analysis with the text of § 12-33. See General Statutes § 1-2z. Section 12-33 provides in relevant part: *"Any . . . company aggrieved* by the action of the commissioner may, within one month from the time of such action, make application in the nature of an appeal therefrom to the superior court of the judicial district in which such applicant is located, which shall be accompanied by a citation to said commissioner to appear before said court. . . ." (Emphasis added.)

I would conclude that § 12-33 plainly and unambiguously applies to the plaintiff in the present case. Section 12-33 contains broad and inclusive language permitting any company aggrieved by an action of the defendant to appeal from said action within one month. First, the word "[a]ny," in conjunction with the word "company," is one of the broadest possible formulations of standing that, in the absence of any limiting language, evinces an intent to grant standing for any properly aggrieved party. See General Statutes § 12-33; see also *Location Realty, Inc.* v. *Colaccino*, 287 Conn. 706, 724–25, 949 A.2d 1189 (2008) (phrases " 'any action' " and " 'no person' " were broad formulations and, in absence of any limiting language, demonstrated intent to preclude actions outside of statutory scheme); *Manifold* v. *Ragaglia*, 272 Conn. 410, 422, 862 A.2d 292 (2004) (concluding that text of statutory immunity provision indicated that legislature intended for word "any" to have broad application). Second, the appealing party must be a " 'company,' " which is separately defined in the tax title to mean "any person, partnership, association, company, limited liability company or corporation, except an incorporated municipality . . . ." General Statutes § 12-1. Third, § 12-33 requires that the company taking the appeal be aggrieved. Fourth, the aggrievement must result from an action of the defendant. General Statutes § 12-33.

I would next conclude that the broad statutory requirements of § 12-33 are satisfied by the facts of the present case. The plaintiff, a specially chartered Connecticut railroad corporation, seeks judicial review of an action of the defendant, and claims that it "has been aggrieved through [the defendant's] application of the provisions of § 12-587 to sales of fuel made to [the plaintiff] during the relevant period as well as [the defendant's] denial of [the plaintiff's] claims for [a] refund." In my view, because the plaintiff's alleged aggrievement stems from the defendant's refusal to consider the merits of the plaintiff's claim that the tax was imposed in violation of federal law, it is necessary to understand the reasoning behind the plaintiff's claim in order to properly determine whether the plaintiff may appeal pursuant to § 12-33.

A review of the record demonstrates that the plaintiff's claim was premised on its broad contention that the application of the petroleum tax itself to the plaintiff's purchases of petroleum violated the 4-R act. In its protest of the defendant's disallowance, the plaintiff made clear that the basis of its claim was "that [the] application of the tax to [the plaintiff's] purchases is a violation of federal law," and that "[t]he imposition of the [petroleum tax] to fuel purchased by [the plaintiff] for its locomotives is unlawful and violates the [4-R act] . . . ." The majority, in both parts II and III of its opinion, focuses on the fact that the plaintiff's claim logically included monetary relief and, therefore, that the claim must be brought pursuant to the provisions of the petroleum tax chapter governing refunds. The plaintiff unquestionably sought a refund. This does not, however, alter the reason that the plaintiff filed the request or the reasoning set forth in its claim. The plaintiff's claim was not merely that, through inadvertence, it had overpaid the tax without regard to the validity of the imposition of the tax. To the contrary, the plaintiff

directly sought to challenge the unlawfulness of the petroleum tax as applied to its transactions with the distributor. In so doing, the plaintiff claimed that its pecuniary interests were aggrieved in the amount of $100,176.91 and that it was entitled to a refund because it was unlawful for the petroleum tax to have applied in the first instance to its purchases of petroleum. The reasoning motivating the plaintiff's claim demonstrates that § 12-33 is a valid remedy for the plaintiff as a company aggrieved by an action of the defendant.

At first, the majority grants that "the text of § 12-33 appears to permit the appeal in the present case insofar as the plaintiff is a 'company aggrieved by the action of the [defendant]' . . . ." The majority goes on to state, however, that "this does not end [the] inquiry" because "[§] 1-2z also directs [the court] to consider the relationship of this statute to other statutes." The majority therefore examines provisions of the petroleum tax chapter, specifically §§ 12-589 and 12-597, and their relationship to § 12-33. On the basis of its analysis, the majority concludes that the plaintiff is barred from appealing under § 12-33 because § 12-597 is the statute specific to such appeals. I agree that, pursuant to § 1-2z, the court is obligated to look to other relevant statutes to determine whether § 12-33 is a permissible avenue of appeal for the plaintiff. I disagree, however, with the majority's analysis and would instead conclude that those provisions do not bar the plaintiff from appealing under § 12-33.

Like the majority, I first look to § 12-589 (a) (1), which provides in relevant part that "[a]ny company believing that it has overpaid any taxes imposed under section 12-587 may file a claim for refund in writing with the commissioner . . . ." That statute goes on to provide that, unless the claimant takes an appeal pursuant to § 12-597, the defendant's action on a claim for a refund becomes final after the expiration of one month. Gen-

eral Statutes § 12-589 (a) (4). Unlike the majority, I would conclude that this provision of the petroleum tax chapter, and its reference to § 12-597, is not binding in the present appeal. First, I would conclude that these provisions are inapplicable to the present appeal on the basis of my prior analysis of the plaintiff's claim, namely, that the plaintiff directly sought to challenge the unlawfulness of the petroleum tax as applied to its transactions with the distributor and its request for a refund was merely a logical extension.

Second, and in accordance with part II of the majority opinion, the plaintiff, as a purchaser or consumer of petroleum products, is beyond the purview of the petroleum tax chapter generally, and § 12-589 specifically, because it is not "[a]ny company," as that phrase only includes refiners and distributors of petroleum. See General Statutes § 12-587 (b) (1) ("any company which is engaged in the refining or distribution, or both, of petroleum products and which distributes such products in this state shall pay a quarterly tax on its gross earnings derived from the first sale of petroleum products within this state"). This conclusion is supported by the legislative intent expressly set forth in the petroleum tax chapter. General Statutes § 12-599 (a) provides in relevant part that "[i]t is not the intention of the General Assembly that the tax imposed under section 12-587 be construed as a tax upon purchasers of petroleum products . . . ." In conjunction with this statement of intent, the legislature, in subsection (b) of § 12-599, enacted a provision to ensure that the petroleum tax would not become a "passthrough" tax levied onto consumers. Although a federal district court held that the anti-passthrough mechanism was unconstitutional; *Mobil Oil Corp.* v. *Dubno*, 492 F. Sup. 1004, 1014 (D. Conn. 1980), aff'd in part, dismissed in part, 639 F.2d 919 (2d Cir. 1981); this court subsequently concluded in *Texaco Refining & Marketing Co.* v. *Commissioner*

*of Revenue Services*, 202 Conn. 583, 596, 522 A.2d 771 (1987), that the legislative intent survived, specifically, that the provisions of the petroleum tax continued to apply only to distributors and refiners and not to consumers or purchasers. Indeed, the majority expressly relies on this legislative intent in concluding in part II of its opinion that the plaintiff cannot appeal under § 12-597 because the legislature intended that provision to only permit appeals by taxpayers, namely, refiners and distributors of petroleum.

On the basis of the aforementioned discussion, I would conclude that § 12-597 is inapplicable to the present appeal and does not bar the plaintiff from availing itself of § 12-33. Accordingly, I disagree with the majority's application in the present appeal of the doctrine of statutory interpretation that a specific statute controls over a general statute.[6] First, because I conclude that the language of § 12-33 is plain and unambiguous and that § 12-597 does not apply, I would adhere to this court's admonition that, "[i]f the [statute] at issue [is] in fact . . . plain and unambiguous . . . [then] resort to this canon [of statutory construction of specific over the general], which is itself a form of 'extratextual evidence of the meaning of the statute'; General Statutes § 1-2z; simply would be unnecessary." *Miller's Pond Co., LLC* v. *New London*, 273 Conn. 786, 811 n.25, 873 A.2d 965 (2005). Second, it is axiomatic that a specific statute should prevail over a general statute only when the specific statute actually applies to the issue presented. Id., 810–11 (concluding that General Statutes

---

[6] "[I]t is a well-settled principle of construction that specific terms covering the given subject matter will prevail over general language of the same or another statute which might otherwise prove controlling. . . . The provisions of one statute which specifically focus on a particular problem will always, in the absence of express contrary legislative intent, be held to prevail over provisions of a different statute more general in its coverage." (Internal quotation marks omitted.) *Tappin* v. *Homecomings Financial Network, Inc.*, 265 Conn. 741, 760, 830 A.2d 711 (2003).

§ 35-44b was inapplicable to appeal and did not prevail over General Statutes § 35-31 [b]). Accordingly, and as confirmed by this legislative intent, because the plaintiff is not included in the term "taxpayer," it is not governed by the appeal provision set forth in § 12-597, and its claim is beyond the contemplation of the petroleum tax chapter. Therefore, § 12-597 cannot be the specific statute applicable to the plaintiff's appeal to the exclusion of § 12-33.

In addition to disagreeing with the application of this doctrine of statutory construction, I also disagree with the majority's resulting conclusions. First, contrary to the majority, I find it significant that § 12-33 is located within the first chapter of the tax title, which contains numerous generally applicable provisions governing the defendant.[7] See, e.g., General Statutes § 12-2 (governing appointment, powers and duties of defendant); General Statutes § 12-2d (permitting defendant to compromise any controversy arising under applicable statutes); General Statutes § 12-30 (permitting defendant to impose penalty in cases of failure to timely file any return or report required by law). Several of these provisions specifically relate to the remaining chapters of the tax title. See, e.g., General Statutes § 12-1 (definitions); General Statutes § 12-30a (imposition of interest); General Statutes § 12-33a (court waiver of interest on certain due taxes prohibited). In my view, the location of § 12-33 within the chapter of the tax title containing generally applicable provisions weighs in favor of permitting the plaintiff to appeal pursuant to it. I therefore disagree that § 12-33 must be discounted simply because that provision is located in another chapter of the tax title. Moreover, the location of § 12-597 in the petroleum tax

[7] The majority concludes that § 12-597 must apply instead of § 12-33 because § 12-597 is located within the chapter of the tax title containing the petroleum tax, while § 12-33 is located in a chapter setting forth "provisions relating to the [defendant] . . . generally . . . ."

chapter does not necessitate the conclusion that § 12-33 is unavailable to the plaintiff as a mechanism to appeal. In my view, § 12-597 is properly located within the chapter of the tax title devoted to the petroleum tax because that is the logical location for a provision relating to the petroleum tax that specifically governs *taxpayers* appealing therefrom. More significantly, the location of § 12-597 is immaterial in determining whether § 12-33 remains a viable remedy for the plaintiff, as I would conclude that that provision is inapplicable to the plaintiff.

Second, I would not conclude that § 12-597 displaces § 12-33 merely because § 12-597 references procedures to appeal from the petroleum tax, whereas § 12-33 does not expressly provide that it is applicable to the petroleum tax or that it is meant to supersede more specific appeals provisions. As previously set forth, although the petroleum tax now burdens consumers and purchasers, the legislature originally had intended that the tax only burden distributors and refiners. The legislature therefore drafted § 12-597 to only provide appeals for those parties as "taxpayer[s] . . . ." Accordingly, it is not significant that the petroleum tax chapter fails to reference § 12-33 because there is no reason for § 12-597, or any of the petroleum tax provisions, to reference it. In my view, it is also not significant that § 12-33 fails to reference the petroleum tax. Regardless of whether § 12-33 is termed a general appeals statute, an alternate appeals provision or an appeal provision of last resort, I see no reason why that statute would contain references to specific provisions of the tax title, as doing so would undermine its facial operation as a broad appeal provision.

Third, permitting the plaintiff to appeal pursuant to § 12-33 would not render § 12-597 superfluous. Allowing the plaintiff to appeal under § 12-33 would not permit *any* aggrieved company to appeal under that provision.

This result would not occur because these companies, which qualify as taxpayers pursuant to part II of the majority opinion, would be prohibited from appealing under § 12-33 by the proper application of the aforementioned doctrine that a specific statute governs over a general statute. Moreover, the majority claims that if any company could appeal under § 12-33, and because § 12-33 already existed at the time the legislature enacted the petroleum tax chapter, "there would have been no reason for the legislature to have enacted § 12-597." Although under the specific facts of this case the plaintiff may appeal pursuant to § 12-33, that does not dictate that the legislature had no purpose in enacting § 12-597, or that § 12-597 is a superfluous provision. As the majority itself notes, "the legislature has enacted specific appeal provisions for every kind of tax in the state tax code . . . ." It is therefore perfectly logical that the legislature purposely enacted § 12-597 in order to channel through it all the appeals filed by taxpayers of the petroleum tax.[8]

Lastly, the majority concludes that § 12-597 must apply because "nothing in . . . [the] genealogy [of § 12-33] demonstrates that the legislature intended it to operate as an alternative to the specific appeal procedures otherwise provided by the legislature [in § 12-597]." I disagree that resorting to the genealogy of § 12-33 is warranted in the present appeal. First, because I would conclude that the language of § 12-33 is plain and unambiguous, I would not resort to the genealogy of that statute. *Harpaz* v. *Laidlaw Transit, Inc.*, 286 Conn. 102, 109, 112, 942 A.2d 396 (2008) (pursuant to § 1-2z, court resorts to legislative history and genealogy only

---

[8] There are differences in the language of §§ 12-597 and 12-33, including the instruction that an appeal filed pursuant to § 12-33 is filed in the judicial district wherein the plaintiff is located, whereas an appeal filed under § 12-597 is filed in the judicial district of New Britain, the location of the tax session of the Superior Court.

after concluding statute is vague and ambiguous). Second, neither party has claimed that the genealogy of § 12-33 is relevant to the question of whether the plaintiff may appeal under it. The plaintiff, relying on the plain language of § 12-33, has merely characterized that provision as "a general appeal statute" and as "an alternate avenue of appeal to those . . . companies aggrieved by the actions of the [defendant] who may or may not otherwise have an avenue of appeal available to them." I nonetheless discuss the genealogy because the majority relies on it in concluding that the plaintiff is barred from appealing under § 12-33. After reviewing the genealogy of § 12-33, I would conclude, contrary to the majority, that the genealogy of § 12-33 supports the conclusion that the plaintiff may appeal pursuant to that provision.

The majority's analysis of the genealogy of § 12-33 reveals the following. When originally enacted in 1917, the purpose of § 12-33 was to permit parties to appeal from actions of the former board of equalization (board). Public Acts 1917, c. 186, § 1. In 1937, the legislature abolished the board, transferred its powers to the defendant and did so by striking out references to the board and replacing them with references to the defendant, including the precursor to § 12-33. General Statutes (1939 Sup.) § 317e. When the legislature merged the powers of the board with those of the defendant, it did not repeal any of the existing appeal provisions applicable to the defendant. Additionally, after the elimination of the board, the legislature amended the tax provisions formerly under the board's control to include specific appeal provisions, and also included specific appeal provisions for all new taxes in the tax title.

From this extensive genealogy, the majority notes that "the legislature has not repealed § 12-33, and the text of that provision has largely remained unchanged," despite the fact that during the intervening years the legislature provided specific appeal provisions for all

taxes formerly under the board, and for all new taxes. The majority concludes, however, that the genealogy of § 12-33 fails to demonstrate that the legislature intended to permit the plaintiff to appeal pursuant to § 12-33, rather then § 12-597. The majority explains, however, that § 12-33 "is not left without any purpose" because it can be "used to permit appeals from actions of the [defendant] regarding taxes or assessments for which the legislature has not provided a specific appeal statute, including those taxes or assessments codified outside the state tax code." In reaching this conclusion, the majority relies on *Circuit-Wise, Inc.* v. *Commissioner of Revenue Services*, 215 Conn. 292, 293–94 and n.2, 576 A.2d 1259 (1990), wherein the plaintiff appealed a decision of the defendant pursuant to § 12-33, as the hazardous waste assessment in General Statutes § 22a-132 did not, at that time, contain an appeal provision.

I would conclude that the majority's analysis of the genealogy of § 12-33 and its conclusion regarding the present purpose of § 12-33 actually demonstrate that the plaintiff may appeal pursuant to that statute. First, although the original purpose of § 12-33 may have been limited to appeals from the board, the legislature retained § 12-33 when it merged the board's powers with those of the defendant. In so doing, the legislature amended § 12-33 by striking out the reference to the board and substituting in its place the defendant. This legislative action permitted any aggrieved company to appeal from an action of the defendant, without limiting the right to appeal only to a decision arising from any specific tax provision. Additionally, although the legislature has amended the taxes formerly under the board's control to include specific appeals provisions, and despite the fact that the legislature has included specific appeals statutes for new taxes in the tax title, the legislature has retained § 12-33 without substantial alteration. Therefore, despite the passage of almost one quarter of a century since its inception, the legislature

has seen fit to retain the broadly worded language of § 12-33. Second, § 12-33 has not been rendered superfluous because it serves as an avenue of appeal when the legislature fails to draft a specific appeal statute for any imposed tax.

For all of the foregoing reasons, I would conclude that the plaintiff, pursuant to § 12-33, may pursue on appeal its colorable claim that the application of the petroleum tax to its purchases of petroleum violated federal law, and that it is entitled to a refund of those impermissibly imposed taxes.

I therefore respectfully dissent.